# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON AT SEATTLE

---

IN RE:                                    **Case No. 10-21648-MLB**

CHATEAU DE VILLE, LLC.          **PLAN OF REORGANIZATION
                                          AND DISCLOSURE**
                       Debtor.      **STATEMENT**

---

## COBMINED PLAN OF REORGANIZATION

## AND DISCLOSURE STATEMENT

Chateau De Ville, LLC, the debtor-in-possession (hereafter "Debtor" or "CDV"), files this Plan of Reorganization (hereafter "Plan") and Disclosure Statement as a combined document under the provisions of Section 1125(f) of the Bankruptcy Code as a Small Business reorganization.

The Debtor combines this Plan with a Disclosure Statement to provide to all of Debtors' known creditors that information which is deemed by Debtor to be material, important and necessary for their creditors to arrive at a reasonably informed decision in exercising their right to vote on the acceptance of the Plan.

Vortman & Feinstein                              PLAN & DISCLOSURE STATEMENT
500 Union Street, Suite 500
Seattle, Washington 98101
ph (206) 223-9595 f (206) 386-5355                [1]

Case 10-21648-MLB    Doc 31    Filed 12/27/10    Entered 12/27/10 11:41:38    Page 1 of 21

1
2
3
4        Prior to the solicitation of votes by the Debtor in favor of this Plan, the Disclosure

5   Statement must be preliminarily approved by the Court with the Court hearing the final

6   adequacy of the Statement at the time of confirmation; the Court's approval means that

7   the Court deems the Disclosure Statement contains the necessary information for the

8   creditors of the Debtor to make an informed judgment whether to vote in favor of the

Plan, but the Court is not ruling on the merits of the Plan.

9        The debtor will solicit your vote for acceptance of the Plan.  Your acceptance is

10  important:  in order for the Plan to be accepted, at least a majority in number of those

11  claims voting in each class, and at least a two-thirds majority in dollar amount of those

12  claims voting in each class, must vote for the Plan.  You should return your ballot to the

13  address given thereon by the date given on the ballot.  The Order Approving the

14  Disclosure Statement (enclosed) will state the time and place of the hearing on

15  confirmation of the Plan.

16       This Plan and Disclosure Statement contains information about the Debtor and

17  describes the terms on the incorporated Plan. ***Your rights may be affected.  You

18  should read the Plan and this Disclosure Statement carefully and discuss them

19  with your attorney.  If you do not have an attorney, you may wish to consult one.***

20  The proposed distributions under the Plan are discussed herein.

21

22       A.      Purpose of This Document

23  This initial part of the document, the Disclosure Statement describes:

24  •        The Debtor and significant events during the bankruptcy case,

25  •        How the Plan proposes to treat claims or equity interests of the type you

26           hold (*i.e.*, what you will receive on your claim or equity interest if the plan

         is confirmed),

•        Who can vote on or object to the Plan,

Vortman & Feinstein
500 Union Street, Suite 500                              PLAN & DISCLOSURE STATEMENT
Seattle, Washington 98101
ph (206) 223-9595 f (206) 386-5355                      [2]

Case 10-21648-MLB    Doc 31    Filed 12/27/10    Entered 12/27/10 11:41:38    Page 2 of 21

1
2
3
4      •      What factors the Bankruptcy Court (the "Court") will consider when

5             deciding whether to confirm the Plan,

6      •      Why [the Proponent] believes the  Plan is feasible, and how the treatment

7             of your claim or equity interest under the Plan compares to what you

8             would receive on your claim or equity interest in liquidation, and

9      •      The effect of confirmation of the Plan.

10

11     Be sure to read the Plan portion as well as the Disclosure Statement.  This

12 Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed,

13 establish your rights.

14

15     B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

16            The Court has not yet confirmed the Plan described in this Disclosure Statement.

17 This section describes the procedures pursuant to which the Plan will or will not be

18 confirmed.

19            1.   *Time and Place of the Hearing to Approve This Disclosure Statement*

20                 *and Confirm the Plan1.Time and Place of the Hearing to [Finally Approve*

21                 *This Disclosure Statement and] Confirm the Plan*

22     The hearing at which the Court will determine whether to finally approve this

23 Disclosure Statement and confirm the Plan will take place on January ____, 2011 at

24 9:30 a.m., before Judge Marc Barecca.

25

26            2.   *Deadline For Voting to Accept or Reject the Plan2.Deadline For*

                   *Voting For or Against the Plan*

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, Washington 98101
ph (206) 223-9595 f (206) 386-5355

PLAN & DISCLOSURE STATEMENT

[3]

Case 10-21648-MLB   Doc 51   Filed 12/27/10   Entered 12/27/10 11:41:38   Page 3 of 21

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to debtor's counsel, Larry B Feinstein, 500 Union Street, Ste. 500, Seattle, WA 98101.  See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by 7 days prior to the hearing  or it will not be counted.

3. *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan3.Deadline For Objecting to the [Adequacy of Disclosure and] Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon Larry Feinstein, debtor's counsel by 7 days prior to the hearing.

4. *Identity of Person to Contact for More Information4.Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Mr. Feinstein

**NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO FUTURE BUSINESS OPERATIONS, VALUE OF PROPERTY, OR THE VALUE OF ANY PROMISSORY NOTES TO BE ISSUED UNDER THE PLAN) ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS STATEMENT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE**

Vortman & Feinstein                                    PLAN & DISCLOSURE STATEMENT
500 Union Street, Suite 500
Seattle, Washington 98101
ph (206) 223-9595 f (206) 386-5355                              [4]

Case 10-21648-MLB    Doc 31    Filed 12/27/10    Entered 12/27/10 11:41:38    Page 4 of 21

YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  THE RECORDS KEPT BY THE DEBTOR ARE DEPENDENT UPON ACCOUNTING PERFORMED BY OTHERS BEYOND THE CONTROL OF THE DEBTOR.  FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE COMPLEXITY OF THE DEBTOR'S FINANCIAL MATTERS, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.

## BACKROUND

The CDV was formed in 2006 by three separate business entities that each owned a one-third interest in the new venture: (1) The Sugden Family, LLC; (2) DJK Properties, LLC, which is wholly owned by Dierdre J. Katt; and (3) TM Northwest Properties, LLC, which is wholly owned by Thanh Nguyen and Melissa June Lu, who are husband and wife. Soon after the CDV was duly registered with the State of Washington, the Sugden Family, LLC sold its one-third interest to TM Properties Northwest.

The sole purpose of the CDV was to develop a multi-unit residential condominium building on a parcel of raw land that it owned in downtown Renton. The

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, Washington 98101
ph (206) 223-9595 f (206) 386-5355

PLAN & DISCLOSURE STATEMENT

[5]

Case 10-21648-MLB    Doc 31    Filed 12/27/10    Entered 12/27/10 11:41:38    Page 5 of 21

property measures approximately .55 acres and is located at what is now known as 110 Williams Avenue South. The CDV was capitalized with the in-kind contribution from TM Northwest Properties of the .55 acre parcel, which had an appraised value of $600,000; an additional $400,000 contributed from TM Northwest Properties; and approximately $464,000 contributed by DJK Properties. In May 2006, the CDV obtained an $8,145,000 construction loan from Venture Bank, and in December of 2007 the CDV borrowed an additional $1,375,000 from Venture. The first construction loan was secured by a deed of trust against the Renton property recorded under King County Recording No. 20060531002820. The second construction loan also was secured by a deed of trust against the Renton property recorded under King county Recording No. 20071211001085.

Chateaux Construction Inc. was hired as the general contractor for the project. They began clearing the land in March 2006, and broke ground for construction of the building in May 2006, after the building permit and construction financing were secured. The Chateau De Ville is a four-story building with one below ground level for parking. The total building size with underground parking is approximately 72,000 square feet.

By the beginning of December 2008, the two members of the CDV were faced with the following set of circumstances: (1) The two construction loans with Venture Bank were set to mature on December 10, 2008; (2) Interest payments on the two loans had not been paid for nearly two months: (3) All the proceeds of the two construction loans had been spent, yet the project was just 92% complete with only nine of the fifty individual units completely finished and ready for occupancy; (4) There were unpaid invoices to subcontractors totaling over $750,000 and several subcontractors had filed liens against the project; (5) the CDV was being sued in King County Superior Court (*Contractor's Roof Service, et. al. vs. Chateau De Ville, LLC*, Case No. 07-2-41128-3);

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, Washington 98101
ph (206) 223-9595 f (206) 386-5355

PLAN & DISCLOSURE STATEMENT

[6]

Case 10-21648-MLB   Doc 31   Filed 12/27/10   Entered 12/27/10 11:41:38   Page 6 of 21

and (6) the CDV's capital reserves had been reduced to a few hundred dollars. In late December, DJK Properties and TM Properties Northwest entered into an agreement to sell nearly all their respective interests to NPX Corp., which is a Nevada corporation wholly owned by Debra Wilson. NPX has been in business since 1996; its principal business is real estate development. After the CDV was reorganized, it was owned 99.8% by NPX; .1% by DJK Properties and .1% by TM Properties Northwest. Soon thereafter, the three members of the LLC renegotiated a one-year extension of the two construction loans, and NPX brought the past-due interest current through February 16, 2009, with a payment to Venture Bank of $177,000.

After the two loans had been renewed with Venture Bank, the CDV, with new capital from NPX, set out to complete the interiors of the remaining forty-one units. For example, granite countertops were installed in thirteen units, and appliances were purchased for sixteen units. Today, thirty-six units in the building are fully completed. Considerable work also was accomplished to the building's exterior and its mechanical systems. The City of Renton required that several improvements and modifications be made prior to the issuance of an occupancy permit. Debra Wilson and employees of NPX held several meetings and attended numerous inspections with the City of Renton over a period of nearly four months. The changes mandated by the City were completed and on April 27, 2009, an occupancy permit was issued. Since January 2009, over $35,000 in delinquent utility bills and $30,000 in past-due property taxes have been brought current. Moreover, the CDV has incurred no new creditors during the past two years. All improvements made to the building since NPX became the Managing Member of the CDV have been fully paid.

Sales at the Chateau De Ville have been slow, hampered in large part by the dramatic downturn in the housing market generally, and the condominium market in

Vortman & Feinstein                                          PLAN & DISCLOSURE STATEMENT
500 Union Street, Suite 500
Seattle, Washington 98101
ph (206) 223-9595 f (206) 386-5355                                   [7]

Case 10-21648-MLB    Doc 31    Filed 12/27/10    Entered 12/27/10 11:41:38    Page 7 of 21

particular. Only three units have been closed and six more are pending approval of the Court.

## I. DEFINITIONS AS USED IN THIS PLAN

As used in the Plan and Disclosure Statement the following terms shall have the respective meanings specified below:

1.1    <u>Administrative Creditor:</u> Any person entitled to payment of an administrative expense.

1.2    <u>Administrative Expense:</u> Any cost or expense of administration of the Chapter 11 case allowed under § 503(b) of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtor.

1.3    <u>Allowed Claim:</u> Any claim against the Debtor, as of the petition date, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim; or, if no claim is filed, then as listed in the Debtor's schedules if liquidated and undisputed, then the amount listed therein.

1.4    <u>Class 1.</u> Cost and expenses of administration as defined in Section 507(a)(1) and (a)(2) of the Bankruptcy code for which application for allowance or a claim is filed as the same are allowed and approved by the court; and post-petition normal payables.

1.5    <u>Class 2.</u> Claims entitled to priority by §507(a)(3), §507(a)(4), and §507(a)(5) of the Bankruptcy Code, as the same are allowed and approved by the court. These are employee wage pension, and consumer deposit claims.

1.6    <u>Class 3.</u> Claims entitled to priority by §507(a)(8), as same are allowed. These are tax claims.

1.7    <u>Class 4(A) and (B).</u> Secured creditors on real property.

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, Washington 98101
ph (206) 223-9595 / fax (206) 386-5355

PLAN & DISCLOSURE STATEMENT

[8]

Case 10-21648-MLB    Doc 31    Filed 12/27/10    Entered 12/27/10 11:41:38    Page 8 of 21

1

2

3

1.8    Class 5. Claims of all creditors of the debtor whose claims are not in

4

Classes 1 through 4, in the amount their claims are allowed by the court, including, but

5

6

not limited to, creditors whose claims may arise out of the rejection of executory

7

contracts, and other general unsecured debts.

8

1.9    Class 6. Class 6 is the debtor, Chateau de Ville LLC

9

1.10    Chapter 11 Case. The case commenced under Chapter 11 of the

10

Bankruptcy Code, and pending in the Bankruptcy Court under the above cause number.

11

1.12    Claim: Any right to payment from the individual Debtor whether or not

12

such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

13

unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to

14

an equitable remedy for breach of performance if such breach gives rise to a right of

15

payment from the Debtor, whether or not such right to an equitable remedy is reduced

16

to judgment, fixed, contingent, matures, unmatured, disputed, undisputed, secured or

17

unsecured.

18

1.13    Confirmation Date: The date upon which the Bankruptcy Court shall enter

19

the order confirming the Plan or as it may be amended.

20

1.14    Confirmation Order: An order of the Bankruptcy Court confirming the Plan

21

in accordance with the provisions of Chapter 11 of the Bankruptcy Code and which is

22

not then subject to a pending motion to clarify, vacate, rehear, modify or amend.

23

1.15    Contested Claim: Any claim as to which the Debtor or any party in interest

24

has interposed an objection in accordance with the Plan, the Bankruptcy Code or the

25

26

Bankruptcy Rules, which objection has not been determined by an order or judgment

that is no longer subject to appeal or certiorari proceeding or as to which to appeal or

certiorari proceeding is pending.

1.16   Creditor:  Any person that has a claim against the Debtor that arose on or before the petition date.

1.17   Effective Date:  The Effective Date shall be the first business day which is at least twenty (20) days following entry of the Confirmation Order on the docket by the Bankruptcy Court.

## II. PAYMENT OF CLAIMS

**A. CLASS 1:** ADMINISTRATIVE POST-CHAPTER 11 EXPENSES.  Except for those administrative expenses incurred in the ordinary course of the Debtor's business which have been paid pursuant to their terms and not under this Plan, each allowed administrative expense shall be paid 100% of their claim, including U.S. Trustee's fees, and attorney fees to Vortman and Feinstein.  Administrative costs are approximately $7500.  These fees are the responsibility of the Debtor and shall constitute a capital charge against the members of the Debtor if not paid from the sales of the properties of the estate as proposed in the Plan.  The Debtor shall be responsible for timely payment of the fees incurred pursuant to 28 U.S.C. 1930(a)(6); after confirmation, until the case is closed, the Debtor shall serve on the UST each month a financial report while the case remains open, which shall include a statement of all disbursements made during the course of the month, whether or not pursuant to the plan.

US Trustee's fees are being paid and shall be timely paid as long as the estate remains open.   Any unpaid fees shall be paid in full on the effective date of the Plan.

**B. CLASS 2:** PRIORITY PRE-PETITION WAGE CLAIMS. The holder of an allowed claim in Class 2, which are priority creditors holding claims for wages, consumer deposits, and certain union/insurance benefits, shall be paid 100% of their allowed claim, in full, ninety days after the effective date of the plan. There are no known Class 2 creditors.

Vortman & Feinstein                                          PLAN & DISCLOSURE STATEMENT
500 Union Street, Suite 500
Seattle, Washington 98101
ph. (206) 223-9595 f. (206) 386-5355
[19]

Case 10-21648-MLB   Doc 31   Filed 12/27/10   Entered 12/27/10 11:41:38   Page 10 of 21

**C. CLASS 3.** PRE-PETITION TAX CLAIMS. Class 3 creditors are taxing agencies and said priority creditors, if any, shall be paid in full, 100% of their allowed claim, in equal monthly pro-rata payments, commencing on the 15th day of the first full month after the effective day of this Plan, with simple interest on the declining balance fixed as of confirmation at the rate of interest set forth under 26 USC §6621 and §6622, from the date of the petition for relief herein, over a period of not to exceed 72 months from when the taxes each first became due. Class 3 claims are not otherwise dischargeable, and the claims herein shall include pre-petition penalties and interest that were accrued prior to the filing of these proceedings, but shall not include any post-petition penalties. These are priority tax claims and are not impaired.   If necessary, any remaining balances due at the end of the term herein shall balloon and be paid in full no later than July 1, 2015, the last date the claims can be paid under §1129(a)(9)(C).  The CDV's Schedule E identifies the Internal Revenue service as being owed $8,000 for employee withholding incurred during three quarters of 2008. Also, any ongoing property taxes will be paid from each sale on a pro-rata basis in full.

**CLASS 4:** SECURED CREDITORS.

There is only one secured creditor: First-Citizens Bank and Trust Company. The CDV has put together a schedule for liquidating the remaining 47 condominium units at the Chateau De Ville that will pay off the outstanding debt owed to First-Citizens Bank and Trust Company in full. The schedule of liquidation is attached hereto as Exhibit 1. It is based on a pricing structure that reduces the pre-petition asking prices by an average of 36% for the remaining one-bedroom units and an average of 26% for the two-bedroom units.

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, Washington 98101
Ph. (206) 223-9595 / (206) 386-5355

PLAN & DISCLOSURE STATEMENT

[11]

Case 10-21648-MLB    Doc 31    Filed 12/27/10    Entered 12/27/10 11:41:38    Page 11 of 21

**CLASS 5**: <u>GENERAL CREDITORS:</u>

Class 5 creditors are the general unsecured creditors, including eight subcontractors who hold liens against the Chateau De Ville property and two deed of trust holders who are subordinated to First Citizens Bank. Under Section 506, these claims are deemed unsecured. In each case, the rights of these creditors in the Chateau De Ville property are junior to the rights held by First-Citizens Bank and Trust Company and therefore have no equity to attach to their liens, rendering the claims unsecured. After the payment of all administrative claims, priority claims under Class 3 and secured claims under Class 4, it is anticipated that there will be no funds available to pay unsecured creditors. In the event the sale of units at the Chateau De Ville produces revenues in excess of that needed to satisfy administrative, Class 3 and Class 4 claims, those funds would be distributed to Class 5 creditors pro rata. To the extent that the Debtor does not retain any property that has a value in excess of the exemptions allowed by law, then the balances of all Class 5 claims shall be discharged.

## III. VALUATION SUPPORT

The Debtor claims that the net value of the remaining 47 residential condominiums at the Chateau De Ville is equal to or greater than the debt owed to First-Citizens Bank and Trust Company pursuant to the terms of the two promissory notes. The values ascribed to each of the remaining 47 units as represented in the schedule of liquidation (Exhibit 1) is supported by a market analysis conducted recently by First Pacific Marketing Company. That study is attached hereto as Exhibit 2.

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, Washington 98101
ph. (206) 223-9595 f. (206) 386-5355

PLAN & DISCLOSURE STATEMENT

[12]

Case 10-21648-MLB    Doc 51    Filed 12/27/10    Entered 12/27/10 11:41:38    Page 12 of 21

**IV. Means of Implementing the Plan**

1.   *Source of Plan Fund*

Payments and distributions under the Plan will be funded by the sales of the units as proposed in pending motions before the court, and in the attached Exhibits and described above.


2.  Post-confirmation Management

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

1.      Name: Debra Wilson

2.      Affiliations: NPX

3.      Insider? (Yes or No): Yes

4.      Position: Managing Member


3.  Executory Contracts and Unexpired Leases

All executory contracts and unexpired leases will assumed under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, including the pending 6 sales that are subject to a current motion to sell before the court. If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, Washington 98101
ph. (206) 223 9595 f. (206) 386 5355

PLAN & DISCLOSURE STATEMENT

[13]

Case 10-21648-MLB   Doc 31   Filed 12/27/10   Entered 12/27/10 11:41:38   Page 13 of 21

All executory contracts and unexpired leases that are not listed in Exhibit 5.1 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

4. Tax Consequences of Plan

Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.

The following are the anticipated tax consequences of the Plan: none

5. CONFIRMATION REQUIREMENTS AND PROCEDURESIV.CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

Vortman & Feinstein                                      PLAN & DISCLOSURE STATEMENT
500 Union Street, Suite 500
Seattle, Washington 98101
**ph** (206) 223 9595 **f** (206) 386 5355            [14]

Case 10-21648-MLB    Doc 31    Filed 12/27/10    Entered 12/27/10 11:41:38    Page 14 of 21

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that unsecured Classes and the subordinated lien holders are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that Class 4 First Citizens Bank and Trust is unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

6.     *What Is an Allowed Claim or an Allowed Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, Washington 98101
**ph** (206) 223 9595 **f** (206) 386 5355

PLAN & DISCLOSURE STATEMENT

[15]

Case 10-21648-MLB    Doc 31    Filed 12/27/10    Entered 12/27/10 11:41:38    Page 15 of 21

the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

7.  The deadline for filing a proof of claim in this case has not been set.

8. What Is an Impaired Claim or Impaired Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

9.  Who is Not Entitled to Vote

The holders of the following six types of claims and equity interests are *not* entitled to vote:

- •  holders of claims and equity interests that have been disallowed by an order of the Court;

- •  holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- •  holders of claims or equity interests in unimpaired classes;

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, Washington 98101
**ph** (206) 223 9595 **f** (206) 386 5355                    [16]

PLAN & DISCLOSURE STATEMENT

Case 10-21648-MLB    Doc 31    Filed 12/27/10    Entered 12/27/10 11:41:38    Page 16 of 21

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan [and to the Adequacy of the Disclosure Statement].

10.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

11.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later.

a. *Votes Necessary for a Class to Accept the Plan*.  A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (½) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2)

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, Washington 98101
**ph** (206) 223 9595 **f** (206) 386 5355          [17]

PLAN & DISCLOSURE STATEMENT

Case 10-21648-MLB   Doc 31   Filed 12/27/10   Entered 12/27/10 11:41:38   Page 17 of 21

the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

      b. *Treatment of Nonaccepting Classes2.Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a cram down plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

You should consult your own attorney if a cramdown confirmation will affect your claim or equity  interest, as the variations on this general rule are numerous and complex.

      12. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, Washington 98101
**ph** (206) 223 9595 **f** (206) 386 5355

PLAN & DISCLOSURE STATEMENT

[18]

Case 10-21648-MLB    Doc 31    Filed 12/27/10    Entered 12/27/10 11:41:38    Page 18 of 21

## V. EFFECT OF CONFIRMATION OF PLAN

    A.    DISCHARGE OF DEBTOR

<u>Discharge.</u>  On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B).  After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

    B.    Modification of Plan

    The Plan Proponent may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or revoting on the Plan. The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.]

    C.    Final Decree

    Once the estate has been fully administered, as provided in Rule 3022 of the

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, Washington 98101
**ph** (206) 223 9595 **f** (206) 386 5355

PLAN & DISCLOSURE STATEMENT

[19]

Case 10-21648-MLB   Doc 31   Filed 12/27/10   Entered 12/27/10 11:41:38   Page 19 of 21

Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI.    **OTHER PLAN PROVISIONS**

Default.  In the event of default, the creditor occasioning said default shall give the debtor 30 days notice of default and opportunity to cure. If said default is not cured within said period, the creditor shall be entitled to enforce the entitlement under this Plan in any court of competent jurisdiction. Further, the holder of an allowed claim pursuant to Section 507(a)(8) of the Bankruptcy Code shall be entitled to automatically resume collection activities against the Debtor, without first obtaining this court's approval, if the Debtor fails to cure any default in repayment under the confirmed plan within thirty (30) days of receiving written notice of default from such holder. Secured creditors whose loans are restructured under this Plan shall treat said loans as current and treat said obligations as an ongoing amortizing obligation. In the event of default to a secured creditor, the creditor occasioning said default shall give the debtor 30 days notice of default and opportunity to cure; if said default is not cured within said period,

///

///

///

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, Washington 98101
**ph** (206) 223 9595 **f** (206) 386 5355

PLAN & DISCLOSURE STATEMENT

[20]

Case 10-21648-MLB    Doc 31    Filed 12/27/10    Entered 12/27/10 11:41:38    Page 20 of 21

1

2

3

4

5   the creditor shall be entitled to relief from the stay under this Plan, and may enforce

6   any state law foreclosure or collection rights that may exist in the security documents

7   between the parties.

8       Dated this ____27_____ day of December, 2010.

9

10  /s/ Debra Wilson

11  _____

12
    Debra Wilson, Managing Member
13

14
    /s/ Larry B Feinstein
15

16  _____

17  Larry B Feinstein, WSBA #6074

18  Attorney for Debtor

19

20

21

22

23

24

25

26

Vortman & Feinstein                          PLAN & DISCLOSURE STATEMENT
500 Union Street, Suite 500
Seattle, Washington 98101
**ph** (206) 223 9595 **f** (206) 386 5355          [21]

Case 10-21648-MLB   Doc 31   Filed 12/27/10   Entered 12/27/10 11:41:38   Page 21 of 21